MITCHELL *v.* MARTINDILL.

4-7710                                                    189 S. W. 2d 662

Opinion delivered October 8, 1945.

*W. D. Davenport,* for appellant.

*C. E. Yingling* and *C. E. Yingling, Jr.,* for appellee.

Holt, J. Appellants, F. R. Mitchell and wife, came from Texas to White county, Arkansas, to purchase a farm, in answer to an advertisement appearing in a Texas newspaper. Upon arrival in White county, they contacted a real estate agent who showed them a farm belonging to appellees, and on October 27, 1944, they entered into a written contract with appellees to purchase the farm for a consideration of $5,500, $3,500 being paid in cash, and the balance evidenced by four promissory notes of $500 each. Pursuant to this contract appellees, G. G. Martindill and his wife, on November 11, 1944, executed and delivered to appellants their warranty

deed. Neither the contract nor the deed contained any reservations whatsoever. The contract was an agreement to convey the land in question and the deed conveyed only the land without any reservations as to crops and was absolute on its face. Following the purchase, appellants moved on the property and took possession.

At the time the farm was sold to appellants, there was a crop of strawberries growing thereon, which matured in 1945. Appellees claimed ownership of the berries and the right to harvest them when they matured by virtue of an alleged oral agreement with appellants. Upon appellants' denying them this alleged right, appellees brought suit in which they alleged that "during the negotiations for the sale and conveyance of said lands and before the execution and delivery of the deed thereto, an oral contract and agreement was entered into between plaintiffs and defendants by the terms of which plaintiffs were to retain as their property one acre, more or less, of strawberries which had previously been planted and were at the time growing upon the lands aforesaid and which were owned jointly by the plaintiffs, for the purpose of harvesting and selling the strawberries therefrom during the crop season of 1945, it being further understood and agreed that either the plaintiffs or the defendants, or both, might dig plants therefrom for the purpose of setting out new strawberries during the spring of 1945 and that when plaintiffs had harvested and sold the crop therefrom during the 1945 season the same would be and become the property of defendants." They prayed that appellants be enjoined from interfering with their right to harvest the berries, etc. Appellants answered with a general denial. The court found the issues in favor of appellees and this appeal followed.

For reversal, appellants earnestly contend that the trial court erred in permitting the introduction by appellees of oral testimony to vary the terms of the deed executed by appellees.

We have reached the conclusion that appellants' contention must be sustained. We think the undisputed

testimony shows that the alleged oral agreement by which appellees claimed reservation of the strawberry crop took place prior to the execution of the deed by appellees on November 11, 1944. In these circumstances, the rule is well established that where a party executes a deed in fee of the land without an express reservation of a growing crop, his interest in the crop passes by the conveyance.

This court announced this rule as early as the 10th Arkansas in *Gibbons* v. *Dillingham, et al.*, page 9, 50 Am. Dec. 233, where it is said: "The first question raised by the record in this case, is whether the defendant, Dillingham, by his deed of conveyance for the land, also passed to the plaintiff all his interest in the crop of corn then growing upon it. The deed is absolute upon its face and contains no reservation whatever. The authorities are full and clear upon the point that where a party executes an absolute deed in fee of the soil, and without an express reservation of the growing crop, his interest in such crop also passes by such conveyance. A reservation by parol, if permitted to be established in a court of justice, would come directly in conflict with the well settled rule of law which declares that parol evidence is inadmissible to contradict or substantially vary the legal import of a written agreement. Such evidence is not only contrary to the statute of frauds, but to the maxims of the common law. The written instrument must be considered as containing the true agreement between the parties, and as furnishing better evidence than any which can be supplied by parol," and in *Broderick* v. *McRae Box Company*, 138 Ark. 215, 210 S. W. 935, Judge HART, speaking for the court, said: "All the articles of agreement between Dr. Hall and Broderick for the sale of the land were merged in and extinguished by the subsequent deed thereto between the parties. The deed, in the absence of fraud or mistake, is the final contract between the parties and cannot be varied or modified by parol evidence. In the application of this rule, this court has held that an oral agreement between the vendor and purchaser of land made at the time of the execution of the deed to the

effect that crops growing on the land shall be excepted from the conveyance and remain the property of the vendor is of no effect and may not be proved by the vendor. *Gibbons* v. *Dillingham, et al.,* 10 Ark. 9, 50 Am. Dec. 233, and *Gailey* v. *Ricketts,* 123 Ark. 18, 184 S. W. 422.''

Again, in the more recent case of *Western Union Telegraph Company* v. *Bush,* 191 Ark. 1085, 89 S. W. 2d. 723, 103 A. L. R. 367, we said: ''We have followed the ancient doctrine in regard to conveyances without reservations. Such conveyances carry the growing crops as a part of the realty. . . . Until the matured crops are severed, whether actually or constructively, they remain a part of the real property,'' again citing with approval *Gibbons* v. *Dillingham.*

Appellees say: ''But if it be held that the parol evidence rule is violated by the testimony as to a contemporaneous oral agreement of reservation not included in the deed, the decision of the lower court must nevertheless be affirmed on the ground that the testimony was sufficient to show that a subsequent parol agreement was entered into reserving the crops.'' On this point, appellee, G. G. Martindill, testified: ''Q. All this conversation you claim you had with Mr. Mitchell about reserving the berries happened that day while you were out there and before you ever executed a written contract, wasn't it? A. Yes, sir, we talked it over as we came out of the field and agreed on the price of the place—that is the berries —I reserved my potatoes, cotton and berries.'' On the next morning following the execution of the written contract, October 27, 1944, appellee, G. G. Martindill, offered to sell the strawberries to appellants for $500, and appellant, Mitchell, replied that ''I will let you go ahead and reserve the berries.'' It will be observed that these conversations took place prior to the execution of the deed on November 11, 1944, and therefore, this testimony was inadmissible for the reasons assigned above.

Before an oral agreement could be upheld here, it must have been made subsequent to the execution of the

deed here in question and for a valuable consideration. We find no evidence in the record to support any such oral agreement. *Cook* v. *Cave*, 163 Ark. 407, 260 S. W. 49.

Appellees next insist ''that they were entitled to the relief granted them on the ground that a mutual mistake was made in the execution of the deed and for that reason the reservation should be engrafted thereon and enforced.''

We think this contention clearly untenable for the reason that we have not been pointed to any evidence in this record to support it. At least, we are unable to find evidence of that clear and convincing character required to support such a contention.

The rule is announced by this court in *Sewell* v. *Umsted*, 169 Ark. 1102, 278 S. W. 36, in this language: ''The authorities all require that the parol evidence of the mistake, and of the alleged modification, must be most clear and convincing, . . . or else the mistake must be admitted by the opposite party; the resulting proof must be established beyond a reasonable doubt. Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a mere preponderance of the evidence, but only upon a certainty of the error.''

For the error indicated, the decree is reversed and the cause remanded with directions to enter a decree consistent with this opinion.