## NATHANIEL HATCH *vs.* BUCHAN HASKINS.

When two mortgages, dated and acknowledged at different times, are record-ed upon the same day, their priority of registry must be determined by the record alone, and no parol evidence is admissible to show which was first received.

The order in which the mortgages are entered upon the book of records, fur-nishes no evidence that one was received prior to the other.

Where so far as it respects the record, the rights under two deeds are equal, the title under the one first made is not defeated or impaired by such regis-try of the second; but to give the second deed the priority, it must be first recorded.

As the possession and production of a deed by the grantee, is *prima facie* ev-idence of its having been delivered; so if it be found in the hands of the grantor, the presumption arises that no delivery had been made.

THIS action was brought to recover possession of certain mort-gaged premises, and came before the Court upon a statement of facts, in the form of the report of a trial, the parties agreeing, that evidence stated as given should be subject to any objections to its competency, and that the Court might infer from the evidence any facts which a jury would be authorized to find. The demandant produced a deed of the premises from *Bussey* to *Brown*, dated *March* 15, 1833, and acknowledged and recorded *April* 27, 1833; a mortgage from *Brown* to *Emmons*, dated *April* 26, 1833, to secure the payment of four notes of $69,60 each, which were pro-

duced by the demandant, overdue and unpaid, acknowledged *April* 27, *and recorded the* 29*th of the same month;* an assignment of the mortgage from *Emmons* to the demandant, dated *May* 2, 1833, acknowledged *May* 3, 1833, and recorded *May* 30, 1838.

The tenant then produced in evidence a mortgage of the same premises to secure the payment of four notes of $69,60 each, from *Brown* to *Bussey,* dated *March* 15, 1833, acknowledged *April* 27, *and recorded April* 29, 1833 ; a quitclaim deed from *Bussey* to the tenant and *Griffin,* dated and acknowledged *June* 9, and recorded *June* 10, 1835 ; and an assignment of the mortgage from *Bussey* to the tenant and *Griffin,* dated *June* 9, 1835, but not acknowledged or recorded.

The demandant then proved a notice to *Mr. Poor,* the tenant's counsel, to produce a mortgage deed from *Bradbury* and *Griffin* to *Brown. Mr. Poor* denied the right to call for the deed, and refused to produce it. The demandant then called *Mr. Poor* as a witness, and he testified in substance, that he found a paper in the common form of a mortgage deed from *Bradbury* and *Griffin* to *Brown,* dated *August* 10, 1833, and acknowledged the same day, conditioned, that the mortgagers should pay the notes of *Brown* to *Bussey,* and to *Emmons ;* that *Bradbury* died intestate, *January* 29, 1834 ; that the witness was attorney of the administrator, and first found this paper after the commencement of this suit among the papers of *Bradbury's* administrator, in the office of *McGaw, Allen & Poor,* which papers were under his peculiar care, but were accessible to his partners, and students in the office ; and that he did not know of its existence until after the sale by *Bradbury's* administrator. The demandant introduced a deed of warranty of the premises from *Brown* to *Bradbury & Griffin,* dated *Aug.* 10, 1833, and acknowledged and recorded the same day ; a deed of one half of the premises from *Griffin* to *Bradbury,* dated *Nov.* 18, 1833, and recorded *July* 11, 1835 ; and a deed from the administrator of *Bradbury* to the tenant, dated *June* 8, 1835, acknowledged the 9th and recorded the 10th of the same month. The clerk in the register's office in *April, May* and *June,* 1833, testified, that he made a memorandum appearing on the back of the mortgage *Brown* to *Emmons,* signed by him, which certifies, that the *Emmons* mortgage was received and entered prior to the

mortgage from *Brown* to *Bussey.* The demandant produced a volume of the records of deeds whereby it appeared, that the *Emmons* mortgage was entered on an earlier page than the *Bussey* mortgage, but there was nothing, unless this, showing which was entered or recorded first.

The tenant then proved by the register of deeds, that all deeds recorded in his office are entered by their titles in a small book the day after they are received, and when recorded, are entered as of the day when left; that in *April,* 1833, deeds were not actually recorded, until two or three weeks after they were received; that several volumes were in use at the same time; and that an entry on an earlier or later page proved nothing as to priority of receipt of either of two deeds received on the same day. The tenant proved, that *Emmons,* at the time he took his mortgage from *Brown,* knew of the existence of the notes and mortgage to *Bussey,* the latter having been made to secure the purchase money, and that to him to secure his profits on the sale.

*Hatch, pro se,* in his argument, contended, that by the deed from *Bussey* to *Brown,* and the mortgage from *Brown* to *Emmons,* proved to have been recorded before any mortgage to *Bussey,* the *Emmons* mortgage had priority; unless postponed by *Emmon's* knowledge of the *Bussey* mortgage. This knowledge of *Emmons* could not affect the rights of his assignee, the demandant. *Stat.* 1821, *c.* 36; *Connecticut* v. *Bradish,* 14 *Mass. R.* 296; *Trull* v. *Bigelow,* 16 *Mass. R.* 406; *Cushing* v. *Hurd,* 4 *Pick.* 253; *Sigourney* v. *Larned,* 10 *Pick.* 72; 2 *Powell on Mort. (Cov. & R. Ed.)* 631, *and note.* As the demandant had no actual notice of the *Bussey* mortgage, none can be implied. 7 *Greenl.* 195; 5 *Greenl.* 369; 8 *Greenl.* 94; 3 *Pick.* 149. No time is allowed in this State for the registration of deeds, and therefore it takes effect only from the time the deed is entered. As the tenant has the legal estate by deed from the administrator of *Bradbury,* the quitclaim to him is a merger of the mortgage, and it cannot be set up as now existing. 3 *Greenl.* 260; 6 *Pick.* 492. The assignment of the *Bussey* mortgage to the tenant, never having been acknowledged, or recorded, cannot avail the tenant, but shows merely, that the quitclaim deed was intended as a discharge. 2

*Greenl.* 322. The tenant took the land, on the purchase from *Bradbury's* administrator, subject to the payment of the *Emmons* mortgage, and cannot set up any title acquired by the *Bussey* mortgage against it. As *Brown's* deed to *Bradbury*, and *Bradbury's* mortgage back to *Brown*, were executed and acknowledged the same day, the law will presume it was one transaction, and that they were delivered at the same time. 4 *Greenl.* 20 ; 5 *Pick.* 181. It is not essential to the validity of a deed that the grantee should be present, or that it should be accepted by him personally at the time. 9 *Mass. R.* 307 ; 10 *Mass. R.* 456 ; 17 *Mass. R.* 213. The testimony of the clerk was properly admitted to prove the time of the receipt of the deeds for registry. It was not to contradict the record, but merely to supply a fact which the record did not show. 8 *Greenl.* 438. If the testimony of the clerk was improper, then that of the register should be rejected. The record itself shows, that the *Emmons* mortgage was first recorded.

*J. A. Poor*, and *H. V. Poor*, for the tenant, handed the Court this brief of their argument.

1. *Hatch* can gain no advantage by his deed that *Emmons* could not. He has legal notice of the prior mortgage.' The deposition of *Porter*, the clerk, and the certificate upon the mortgage from *Brown* to *Emmons*, may be evidence to show *Hatch's* knowledge, but not to show a prior registry.

2. A deed recorded takes effect from and operates as notice to all parties taking subsequent conveyances, from the time of its registry, *Van Rensselaer* v. *Clark*, 17 *Wend.* 25. Our Court has never sustained the doctrine of the cases *State of Conn.* v. *Bradish*, 14 *Mass. R.* 296, and *Trull* v. *Bigelow*, 16 *Mass. R.* 406, but have intimated a contrary doctrine. The case cited from 17 *Wend.* is directly opposed to the *Massachusetts* cases.

3. The plaintiff can take nothing against the defendant's title until his assignment is recorded. The doctrine contended for by the plaintiff destroys his own case. The defendant had no notice of any title in any one, except *Emmons*, whose title was fraudulent, as set up against our prior deed.

4. The case shows, that the two mortgage deeds were recorded simultaneously. No parol evidence is admissible to vary, explain or

alter the registry. If recorded simultaneously our mortgage being prior must take precedence. *Hopkins,* 569; 1 *Paine,* 525; 6 *Johns. C.* 417; 4 *Johns. C.* 70; 2 *Cowen,* 246.

5. The defendant by taking the equity and the mortgage, has not discharged the mortgage. Courts will keep alive a mortgage, or consider it extinguished, as is most for the benefit of the mortgagee. *Hatch* v. *Kimball,* 14 *Maine R.* 9; *Thompson* v. *Chandler,* 7 *Greenl.* 377; *Russell* v. *Austin,* 1 *Paige,* 192; *Forbes* v. *Moffatt,* 18 *Vesey,* 384; *James* v. *Morey,* 2 *Cowen,* 246.

6. There is no evidence that the mortgage from *Bradbury* and *Griffin* to *Brown* was ever delivered or in force. All presumption is against its delivery. It is never presumed to have been delivered when left unexplained in the hands of the grantor. It is found here in the hands of the grantor. *Jackson* v. *Leek,* 12 *Wend.* 105; *Church* v. *Gilman,* 15 *Wend.* 656; *Jackson* v. *Richards,* 6 *Cowen,* 617.

The opinion of the Court was prepared by

SHEPLEY J. — It appears, that *Brown,* who purchased of *Bussey,* reconveyed to him on the same day in mortgage, and on a subsequent day made a second mortgage of the premises to *Emmons.* Both these mortgages were recorded on the same day, there being no indication of the hour of the day, and nothing upon the record to show, that one was received before the other, unless it can be inferred from the fact, that one appears to have been recorded on an earlier page of the book than the other. It is the date of the reception and record, and not the order in which the entry is made, that is to be relied upon as giving notice of priority. The record is the instrument of notice to subsequent purchasers of the state of the title; and to permit it in any manner to be affected by parol or extraneous evidence would not only destroy its value for that purpose, but would convert it into an instrument for deception. It would be dangerous to the rights of all subsequent purchasers, and contrary to the established rules of evidence to admit any of the testimony offered to explain or vary the record; and it must all be regarded as out of the agreed statement of facts; and the decision of this point in the case must be made from the information to be derived from the record alone.

By the mortgage to *Bussey*, the estate passed, and did not remain in the grantor until the deed was recorded. *Marshall* v. *Fiske*, 6 *Mass. R.* 31. This title may be defeated by a subsequent conveyance first recorded. But to have this effect the record should be first, not simultaneous. The record of both the mortgages must in this case be regarded as made at the same time. So far as it respects the record their rights are equal, and the title which passed by the first deed is not defeated by an equality, but by a superiority of right in the record. A stranger to the title wishing to purchase and applying to the proper source for information finds the owner has made two conveyances to different persons one before the other, and that both were recorded at the same time; how can he justly conclude, that the title by the first conveyance has been defeated, when the second purchaser has not in any way acquired a superiority of right ? Judge *Trowbridge* says, if " the last deed is recorded before the first the estate will pass to the second purchaser." 3 *Mass. R.* 531. Mr. Justice *Jackson*, in delivering the opinion of the Court, in the case of *State of Connecticut* v. *Bradish*, 14 *Mass. R.* 300, says, " but if the second purchaser procures his deed to be recorded before the other, and then sells the land *bona fide,* and for a valuable consideration to a person wholly ignorant of those circumstances, the latter will hold the land against the first purchaser."

The demandant failing to shew, that the title by the first mortgage was defeated, can recover only by assuming the position of a second mortgagee, and shewing that the debt secured by the first mortgage has been paid, or that the tenant holds it in such a manner, that he cannot set it up against him. The first mortgage cannot be regarded as paid or merged ; for it is agreed, that it was assigned to the tenant and *Griffin*, and that it was given to secure certain notes, " which were produced by the tenant overdue at the commencement of this suit and unpaid." The tenant derives his title by a conveyance from *Brown* to *Bradbury* and *Griffin*, and from *Griffin* to *Bradbury*, and from the administrator of *Bradbury* to himself. The demandant contends, that *Bradbury* and *Griffin* on the day of their purchase from *Brown* mortgaged the premises to him to secure the payment of the notes given by him to *Bussey* and to *Emmons*. Such a deed appears to have been signed,

sealed and acknowledged by them. The only testimony to prove it to have been delivered and to have taken effect as their deed is, that *Mr. Poor*, who was attorney for the administrator of *Bradbury*, "first found this paper after the commencement of this suit among the papers of *Bradbury's* administrator in the office of *McGaw, Allen & Poor.*" It is said, that the delivery must be inferred from the delivery of the deed from *Brown* to them, both being parts of the same transaction. If both had taken effect, they should be construed together as designed to effect one object; but it may be, that after the deeds were prepared and signed, another mode of securing or paying the consideration of their purchase was substituted, and that it was not intended to be delivered. And the absence of all evidence that *Brown* ever had possession of it, or that it has been in the possession or control of any one but one of the grantors and his legal representative, with the fact, that it was found among the papers of that one after his death, raises a presumption, that such must have been the fact. The possession and production of a deed by the grantee is *prima facie* evidence of its having been delivered; and for like reasons in the absence of all contradictory testimony the presumption arises, when found in the possession and produced by the grantor, that it has not been delivered. Upon the testimony in this case, although the fact may be otherwise, that mortgage cannot be considered as a valid deed. The tenant being in possession under a prior mortgage not paid, and so far as now appears not being under any legal obligation to pay the mortgage held by the demandant, may resist his entry.

*Plaintiff nonsuit.*