## HARVEY *v.* LEDBETTER.

4-9457                                                    240 S. W. 2d 18

Opinion delivered June 4, 1951.

Rehearing denied June 25, 1951.

28

*Moore, Burrow, Chowning & Mitchell,* for appellant.
*Carl Langston* and *Philip DeSalvo,* for appellee.

Ed. F. McFaddin, Justice. This is a suit filed on behalf of the appellee, Clifford Paul Ledbetter, a minor, seeking, *inter alia,* to redeem from tax sale a tract of 2½ acres, hereinafter called "the property." From a decree of the Chancery Court allowing the minor to redeem, appellants bring this appeal in which they claim, *inter alia,* that the minor had no title on which to base a redemption.

In 1925 the Twin City Bank conveyed the property to C. W. Letbetter and Flora B. Letbetter, his wife. In December, 1932, C. W. Letbetter and Flora B. Letbetter executed, acknowledged and delivered a deed of the property to their son, J. Clifford Ledbetter.[1] Appellants claim that J. Clifford Ledbetter and Lois Ledbetter, his wife, contemporaneously executed and delivered an undated and unacknowledged deed of reconveyance of the same property to C. W. Letbetter and Flora B. Letbetter, his wife. Appellees deny the execution, as well as the delivery, of the said deed of reconveyance; and—as we see it—the decision in this case turns on the fact question, whether such deed of reconveyance was actually executed and delivered.

[1] The parents spelled the family name "Letbetter." The son spelled it "Ledbetter." The evidence contains explanation of the reason for the difference in spelling; but we regard the explanation as immaterial. In this opinion we will preserve the difference in spelling.

J. Clifford Ledbetter died intestate in 1935, survived by his wife, Lois Ledbetter, and one son, Clifford Paul Ledbetter. The said widow and minor are the appellees. The property forfeited to the State for nonpayment of 1938 taxes; and the tax title is now held by the appellants, V. T. Harvey and Richard H. Burleson. Mrs. Flora B. Letbetter died in 1948; and thereafter her husband, C. W. Letbetter (also one of the appellants), conveyed all his interest in the property to V. T. Harvey.

The appellees' theory of the case is: (a) that J. Clifford Ledbetter was the owner of the property at the time of his death in 1935; (b) that the property forfeited for taxes in 1938; and (c) that the minor, Clifford Paul Ledbetter, has a right, under § 84-1201, Ark. Stats., to redeem from the tax sale, even if the forfeiture for taxes was valid. The appellants' theory is: (a) that J. Clifford Ledbetter and wife executed and delivered the deed of reconveyance to C. W. Letbetter and Flora B. Letbetter; (b) that J. Clifford Ledbetter thereby conveyed all interest in the property, and his minor son, Clifford Paul Ledbetter, has no title on which to base the redemption from the tax sale[2]; (c) that C. W. Letbetter, as surviving spouse and owner of the estate of entirety, conveyed the property to the appellant, Harvey, who also has the tax title; and (d) that appellees have no interest in the property.

The foregoing are the main and salient facts. There are other matters which cloud the issues. One is the void appointment by the Pulaski Probate Court of Mrs. Flora B. Letbetter, as administratrix of the estate of J. Clifford Ledbetter, and her attempted private sale of the property to V. T. Harvey. This void appointment and private sale are explained by the attorney who handled the matter and he is not an attorney of record in this Court. The attorney was not fully informed as to the facts. Another matter is the testimony of Mrs. Lois Ledbetter and one of her relatives, that J. Clifford Ledbetter paid $2,500 in cash to his parents for the deed to the property. There is also the testimony of Mrs. Lois Ledbetter that her signature

---

[2] See *Bowles* v. *Dierks Lumber & Coal Co.*, 217 Ark. 892, 233 S. W. 2d 632.

on the deed of reconveyance is a forgery. This testimony will be discussed hereinafter.

In addition to insisting that there was execution and delivery of the said deed of reconveyance, the appellants have also argued the effect of Act 423 of 1941 on § 84-1201, Ark. Stats.: that is to say, (a) appellants urge that the minor, Clifford Paul Ledbetter, cannot redeem from the tax sale because the tax sale proceedings were confirmed by the Chancery Court under § 84-1315, *et seq.*, Ark. Stats., in 1947; and (b) the appellants contend that such confirmation decree cut off the minor's right to redeem. In making these contentions, appellants necessarily contend that Act 423 of 1941—which amended § 8719, Pope's Digest—had the effect of impliedly cancelling the minor's right to redeem, as allowed by § 84-1201, Ark. Stats. Mr. Justice HOLT agrees with the appellants in the contentions stated in this paragraph; and for those reasons only, he votes to reverse the Chancery decree.

We of the majority hold that a minor's right to redeem under § 84-1201, Ark. Stats., was not cut off by said Act 423 of 1941; but we have reached the conclusion that the deed of reconveyance to C. W. Letbetter and Flora B. Letbetter was actually signed by J. Clifford Ledbetter and Lois Ledbetter and was actually delivered to the grantees, C. W. and Flora B. Letbetter; and that such execution and delivery of the deed of reconveyance left the minor appellee no title with which to maintain this suit. For these reasons we hold that the Chancery decree should be reversed.

Here are some of the reasons impelling the conclusions reached:

(1)—In 1932 J. Clifford Ledbetter lived in Little Rock and was engaged in the business of making bonds for persons arrested and charged with crimes. He had no real estate in his own name, and he persuaded his mother and father to deed to him the property here in dispute, in order that he could be shown as an owner of real property in Pulaski County. Carlos Letbetter, a

brother of J. Clifford Ledbetter, and a son of C. W. and Flora B. Letbetter, testified by deposition:

"Q. Now, did your mother and father, do you know, convey this property to your brother, J. Clifford?

"A. Yes, I was present the day my brother made her a proposition of deeding the property to him so he could make additional bonds, and he in turn made a deed back to mother, and that this was for their protection, he said they could record the deed at any time.

"Q. Did you see the deed in your mother's possession?

"A. Yes, I did, but I did not pay particular attention.

"Q. But you do know it was delivered by your brother to her?

"A. Yes, sir.

"Q. Was your brother's wife, Lois Ledbetter, present when this conversation was had between your mother and your brother?

"A. No, she wasn't.

"Q. Where was the deed made up, do you know?

"A. That I could not say for sure; I believe it was Joe Wills who made those deeds.

"Q. Handing you this instrument marked Exhibit 'B' heretofore identified as a warranty deed, I ask if that is your brother's signature?

"A. Yes, it is without a doubt. He always made his J and C with a sort of flourish, and capitalized the B after the d.

"Q. Are you acquainted with your sister-in-law's signature?

"A. Not very well; apparently it is her signature as I remember it.

"Q. What did your brother say to your mother with relation to the payment for this property?

"A.   Well, there was no agreement made as to the payment in the transfer of this property because mother was doing it only as a favor to him in order to make additional bonds.

"Q.   What did he say regarding getting it back?

"A.   He said that in making the two deeds that any time she wanted to she could record her deed and the property would automatically be hers again."

(2)—C. W. Letbetter—father of J. Clifford Ledbetter and grandfather of the minor, Clifford Paul Ledbetter —testified by deposition that as engineer of the Missouri Pacific Railroad Company on the Sunshine Special trains, he was out of the city each day and necessarily left business matters to his wife, Flora B. Letbetter. He could not recall the details of the reconveyance of the property but did testify:

"Q.   Did your son Clifford pay you anything for this property?

"A.   Not one cent I remember of.

"Q.   What was the reason you conveyed this property to your son?

"A.   So he could own some property in order to go into business.

"Q.   In other words, did he tell you it was necessary he own some property to qualify as a surety?

"A.   That is what I remember.

"Q.   He did not own other property in the State of Arkansas?

"A.   I don't think so.

"Q.   And you conveyed it for that purpose?

"A.   Yes, sir.

. . . . . .

"Q.   Referring to the deed marked Exhibit 'B' signed by your son and wife, do you recall whether that deed was delivered to you or to Mrs. Letbetter,—

"A. I don't remember distinctly but I was simply giving him the property to use for the surety bond business and I believe he did execute a deed and give it back to me."

(3)—All of the testimony of Mrs. Lois Ledbetter is considerably weakened by the fact that she denied that she ever signed the deed of reconveyance to C. W. Letbetter and Flora B. Letbetter. Some of her admittedly genuine signatures were introduced in evidence, as also was the original deed of reconveyance; and a handwriting witness of considerable experience, after comparing the admitted signatures with the disputed one, testified that it was his opinion that the disputed signature was the genuine signature of Mrs. Lois Ledbetter. All of these instruments have been examined by us; and we believe the testimony of the handwriting witness to be true. With Mrs. Lois Ledbetter's testimony discredited on the matter of her signature, then her testimony on other vital points is considerably weakened.

(4)—The original deeds are in the transcript, and an examination of them has been most informative—*i. e.* (a) the deed from C. W. Letbetter and wife to J. Clifford Ledbetter; and (b) the deed of reconveyance from J. Clifford Ledbetter and Lois Ledbetter to C. W. Letbetter and Flora B. Letbetter. These deeds most convincingly establish that they were prepared on the same typewriter by the same person and at the same time. The attorney alleged to have prepared the deeds has been dead several years; but the deeds are mute evidence of their own genuineness. It is true that the deed of reconveyance from J. Clifford Ledbetter and Lois Ledbetter to C. W. Letbetter and Flora B. Letbetter is undated and unacknowledged; but these omissions do not affect the validity of the deed between the parties. A deed delivered passes the title between the parties though without date or acknowledgment, as the deed takes effect from delivery. See *Floyd* v. *Ricks,* 14 Ark. 286, 58 Am. Dec. 374, and *Williams* v. *Kitchell,* 212 Ark. 114, 204 S. W. 2d 873. See also 16 Am. Jur. 472.

.· (5)—Finally, the testimony is most convincing as to the delivery of the deed of reconveyance to C. W. Letbetter and Flora B. Letbetter. Carlos Letbetter testified that he saw this deed in the possession of his mother, Mrs. Flora B. Letbetter, in her lifetime. After her death the deed was found in her trunk, along with (a) the deed whereby she received the property from the Twin City Bank, and (b) the deed that she and her husband executed to J. Clifford Ledbetter. These three deeds were in between the pages of the abstract of the property. Thus the disputed deed of reconveyance (i. e., from J. Clifford Ledbetter and wife to C. W. Letbetter and Flora B. Letbetter) was found in the possession of the grantee, Flora B. Letbetter.

In *Morton* v. *Morton,* 82 Ark. 492, 102 S. W. 213, Mr. Justice Wood, speaking for this Court, said:

"The production of a deed by the grantee is *prima facie* evidence of its delivery. 2 Greenl. Ev. § 257; *Maynard* v. *Maynard,* 10 Mass. 455; *Hatch* v. *Haskins,* 17 Me. 391; *Games* v. *Stiles,* 14 Peters, 322, 10 L. Ed. 476.

"In *Tunison* v. *Chamblin,* 88 Ill. 378, it is said: 'When a deed, duly executed, is found in the hands of a grantee, there is a strong implication that it has been delivered, and only clear and convincing evidence can overcome the presumption.' See, also, *Ward* v. *Dougherty,* 75 Cal. 240, 17 Pac. 193, 7 Am. St. Rep. 151; *Griffin* v. *Griffin,* 125 Ill. 430, 17 N. E. 782. See *Haskill* v. *Sevier,* 25 Ark. 152."

To the same effect see *Carter* v. *McNeal,* 86 Ark. 150, 110 S. W. 222, and *Ellis* v. *Shuffield,* 202 Ark. 723, 152 S. W. 2d 535.

In the case at bar we conclude that the preponderance of the evidence establishes that J. Clifford Ledbetter and Lois Ledbetter, his wife, actually executed and delivered the deed which reconveyed the property to C. W. Letbetter and Flora B. Letbetter; that with the title thus reconveyed to C. W. Letbetter and Flora B. Letbetter, there remained no title in J. Clifford Ledbetter for his minor son to inherit from him; that the minor has no title to use as a basis for his attempted redemption

of the tax title from Harvey; and that since C. W. Letbetter, as surviving spouse of the entirety estate, has executed a deed to Harvey, his title should prevail.

Therefore, the decree of the Chancery Court is reversed and the cause is remanded, with directions to enter a decree in accordance with this opinion.